UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ANTHONY WHITESIDE                                                    Plaintiff

v.                                                   Civil Action No. 3:22-cv-502-RGJ

SPRINT SOLUTIONS, INC.,                                             Defendants
SAMSUNG ELECTRONICS AMERICA,
INC.,
GOOGLE LLC

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Defendants Sprint Solutions, Inc. ("Sprint"), Samsung Electronics America, Inc. ("Samsung"), and Google LLC ("Google"; collectively "Defendants"), move to dismiss Plaintiff Anthony Whiteside's ("Whiteside") claims against them.  [DE 6; DE 10; DE 17].  Whiteside responded to each motion and filed several sur-replies, all captioned as responses.  [DE 9; DE 12; DE 15; DE 16; DE 18; DE 19; DE 20; DE 22].  Whiteside filed four motions for summary judgment [DE 21; DE 32; DE 34; DE 36] and filed a "motion in opposition to motion to dismiss." [DE 25]. Sprint replied in support of its motion to dismiss [DE 14] and responded to Whiteside's motions for summary judgment [DE 26; DE 37].  Samsung replied in support of its motion to dismiss [DE 24] and responded to Whiteside's motions for summary judgment [DE 28; DE 33; DE 38].  Google replied in support of its motion to dismiss [DE 13]; and responded to Whiteside's motions for summary judgment [DE 29; DE 39].

For the reasons below, Google's Motion to Dismiss [DE 6] is **GRANTED**, Sprint's Motion to Dismiss [DE 10] is **GRANTED**, Samsung's Motion to Dismiss [DE 17] is **GRANTED**, Whiteside's Motions for Summary Judgment [DE 21; DE 32; DE 34; DE 36] are **DENIED AS**

**MOOT**, and Whiteside's Motion in Opposition to Motion to Dismiss [DE 25] is **DENIED AS MOOT**.

## I.    BACKGROUND

In August 2022 Whiteside filed a complaint in Jefferson County Circuit Court against Defendants.  [DE 1-1].  He alleges the following:

> On or about June 10th, 2009, The [sic] plaintiff Anthony Whiteside was sold a smart device that nearly killed him.  The Plaintiff has been to the hospital many times, and at one point was told by a nurse practitioner, [sic] that she was concerned that he might have a brain tumor.  When you look at the facts about smart devices, they are selling mechanical minds/brain deceptively.  It took a while to catch up with these guys, but in order to make something see the world, and remember it like a camera app and understand what it sees, like facial recognition, you have no choice but to duplicate the eye and brain.  If you want to speak to something, and have it understand what you are saying to it, you have no choice but to duplicate the ear and the brain, and you also have memory and logic, [sic] that has been duplicated.  You have to open books on Electrical Engineering and Biological Psychology, and both topics confirms this.  These product [sic] are still being sold, and have not been classified as defective yet, but hopeful [sic] it doesn't have to be emphasized after this, that you can't use a different brain most, especially one made by a human.  The problem with two minds/brains, is what happens if you start using the external one primarily, [sic] to do the thinking, and remember the past with. [sic] This is how you make your natural mind obsolete.  According to krs367.46999 [sic] a deceptive sale is a class d felony! [sic]

[*Id.* at 6-7[1]].  Whiteside brings a single count against Defendants:

> Count 1-.[sic]
> Also, whenever you look at the dates, this was motivated by racism.  The first generation iphone [sic] came out with an intention to seek a one percent market share, until after 2008, according to Steve Jobs.  Google was also apart [sic] of their plan.  Seventeen days before the election, google [sic] came out with the first android device.  After the election, both companies released these products on all carriers, and halfway through the first term, google [sic] released 40 devices, with the intentions to harm people.  This is the worse hate crime ever committed.  They tried to get everyone to use a different mind, primarily, [sic] and their marketing campaigns depict mind computerization [youtube link].  The plaintiff Anthony Whiteside also started feeling like he was looking through a screen, from the devices illumination, [sic] and later found out that studies shows [sic] that lights and screens infront [sic] of the face changes how people see things mentally, and

---

[1] Whiteside apologizes for "any type errors" and explains that the has "had people connecting to [his] computer illegally, through tcp (transmission control protocol) ports.  [DE 34 at 269-70].

this is what was being depicted through marketing campaigns.  Facts about this can be found in book [sic] about dream psychology.

[*Id.* at 7].  Whiteside seeks seven hundred million dollars in compensatory damages.

Defendants removed the case to this Court in September 2022.  [DE 1].  Defendants now seek dismissal of the charge against them [DE 6; DE 10; DE 17], and Whiteside moves for summary judgment on his claim [DE 28; DE 33; DE 38].

## II.     STANDARD

The Court will address the motions to dismiss first.  Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party.  *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted).  "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

3

*Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

Rule 12(d) of the Federal Rules of Civil Procedure provides that, if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The Court, however, "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting to a summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

"*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 519 (1972). Yet "the lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory" and "the less stringent standard for *pro se* plaintiffs does not compel courts to conjure up unpleaded facts to support conclusory allegations." *Leisure v. Hogan*, 21 F. App'x 277, 278 (6th Cir. 2001). Additionally, the Court cannot "create a claim which [the plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). A *pro se* complainant must still contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). Ultimately, "[t]he Court's duty to construe a *pro se* complaint

liberally does not absolve a plaintiff of the duty to comply with the Federal Rules of Civil Procedure by providing each defendant with fair notice of the basis of the claim." *Jones v. Cabinet For Fams. & Child.*, No. 3:07CV-11-S, 2007 WL 2462184, at *4 (W.D. Ky. Aug. 29, 2007) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002)).

### III.    DISCUSSION

Defendants separately move to dismiss arguing that the Complaint fails to state a plausible claim for relief, that Whiteside has failed to identify a product supplied by them, that Whiteside does not allege privity of contract, and that his claim is barred by the statute of limitations. [DE 6 at 37; DE 10 at 77; DE 17 at 135-40].

### A. Plausible Claim for Relief

Each of the Defendants argues the facts are too fantastical to set forth a plausible claim. [DE 6 at 40-41; DE 10 at 80-81; DE 17-1 at 135-36]. In his various responses, sur-replies, and motions, Whiteside reiterates his original allegations, contends that they are true, and alleges that Defendants have submitted no factual basis for opposing judgment in his favor. [DE 9; DE 12; DE 15; DE 16; DE 18; DE 19; DE 20; DE 21; DE 22; DE 25; DE 32; DE 34; DE 36].[2]

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may therefore dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. "Examples of the former class are claims against which it is clear that the defendants are immune from suit . . . and claims of infringement of a legal interest which clearly does not exist[.]" *Id.* "Examples of the latter class are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." *Id.* at 328; *Denton v.*

---

[2] Some of these filings are duplicates, which Whiteside explains is also because "had people connecting to [his] computer illegally, through tcp (transmission control protocol) ports. [DE 34 at 269-70].

*Hernandez*, 504 U.S. 25, 33 (1992) (indicating that an action has no arguable factual basis when the allegations are delusional or "rise to the level of the irrational or the wholly incredible"). "Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true," *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), "a judge does not have to accept 'fantastic or delusional' factual allegations as true in prisoner complaints that are reviewed for frivolousness." *Hill*, 630 F.3d at 471 (quoting *Neitzke*, 490 U.S. at 327–28).

Whiteside sets forth factual allegations in his complaint filed in the state circuit court. [DE 1-1]. He asserts that Defendants are "selling mechanical minds/brain deceptively." [*Id.* at 6]. He states that "in order to make something see the world, and remember it like a camera app and understand what it sees, like facial recognition, you have no choice but to duplicate the eye and brain." [*Id.*]. He alleges that Defendants have "duplicate[d] the ear and the brain, and you also have memory and logic, that has been duplicated." [*Id.*]. Whiteside states that "[t]hese product [sic] are still being sold, and have not been classified as defective yet, but hopeful [sic] it doesn't have to be emphasized after this, that you can't use a different brain most, especially one made by a human." [*Id.*]. Whiteside concludes that the "problem with two minds/brains, is what happens if you start using the external one primarily, to do the thinking, and remember the past with[,] [t]his is how you make your natural mind obsolete." [*Id.*]. He also argues "whenever you look at the dates, this was motivated by racism." [*Id.* at 7]. Whiteside links the iphone, Steve Jobs, Google, and the 2008 election[3]:

> The first generation iphone came out with an intention to seek a one percent market share, until after 2008, according to Steve Jobs. Google was also apart of their plan.

---

[3] The Court notes that the defendants named here do not include Apple, Steve Jobs, or anyone involved with the 2008 election. Although Whiteside later alleges in one of his motions for summary judgment that "a National Security Advisor to Telecommunications, by the name of Stan Sigman" was involved, this person is not a named defendant either. [DE 36 at 291].

> Seventeen days before the election, google came out with the first android device. After the election, both companies released these products on all carriers, and halfway through the first term, google released 40 devices, with the intentions to harm people.[4]

[*Id.*]. "They tried to get everyone to use a different mind, primarily, and their marketing campaigns depict mind computerization." [*Id.*]. Whiteside states he "started feeling like he was looking through a screen, from the devices [sic] illumination, and later found out that studies shows that lights and screens infront [sic] of the face changes how people see things mentally, and this is what was being depicted through marketing campaigns." [*Id.*].

Whiteside's complaint consists of exactly the type of fantastic and delusional factual allegations that warrant dismissal for frivolousness. *See Burley v. Unknown Defendants*, No. 2:15-CV-143, 2015 WL 8488652, at *3 (S.D. Tex. June 19, 2015), *report and recommendation adopted*, No. 2:15-CV-143, 2015 WL 8212681 (S.D. Tex. Dec. 7, 2015) ("Although these matters are real to Plaintiff, the allegations are so fanciful that a reasonable person would find them irrational and completely lacking any factual basis."); *Abascal v. Jarkos*, 357 F. App'x 388, 390 (2d Cir. 2009) ("On its face, [plaintiff]'s contention that defendants used high-tech equipment to control his thoughts and behavior and remotely to inflict pain can be considered nothing other than fantastic or delusional."); *Best v. Kelly*, 39 F.3d 328, 330–31 (D.C. Cir. 1994) (indicating that claims that are "essentially fictitious" include those that allege "bizarre conspiracy theories, any fantastic government manipulations of their will or mind, [or] any sort of supernatural intervention").

Although this Court recognizes that pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, the duty "does not require us to conjure up

---

[4] Whiteside also explains in one of his motions for summary judgment that "[w]hen you look at the dates, they phased these devices in, and waited halfway through the first term of Obama, to released [sic] fourty [sic] devices, while depicting these images." [DE 32 at 221]. He also explains that "the size of this problem deals with about 91 percent of the planet, including at least four Presidents." [DE 34 at 270].

unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979).  Additionally, this Court is not required to create a claim for Plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To do so would require the "courts to explore exhaustively all potential claims of a pro se plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).[5]

For these reasons, Google, Sprint, and Samsung's Motions to Dismiss [DE 6; DE 10; DE 17] are **GRANTED**.  Having granted each defendant's motion to dismiss, Whiteside's Motions for Summary Judgment [DE 21; DE 32; DE 34; DE 36][6] and his Motion in Opposition to Motion to Dismiss [DE 25] are **DENIED AS MOOT**.

### CONCLUSION

For all of these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) For the reasons above, Google's Motion to Dismiss [DE 6] is **GRANTED**;

(2) Sprint's Motion to Dismiss [DE 10] is **GRANTED**;

(3) Samsung's Motion to Dismiss [DE 17] is **GRANTED**;

(4) Whiteside's Motions for Summary Judgment [DE 21; DE 32; DE 34; DE 36] are **DENIED AS MOOT**;

---

[5] Having concluded that Whiteside fails to state a plausible claim for relief, the Court need not examine Defendants' other arguments.
[6] Whiteside's motions for summary judgment were premature, but having determined that Whiteside's claims fail to meet the pleading standard and must be dismissed, the Court need not address the merits of Whiteside's motions for summary judgment.

(5) Whiteside's Motion in Opposition to Motion to Dismiss [DE 25] is **DENIED AS MOOT**.

(6) The Court will enter separate judgment.

Rebecca Grady Jennings, District Judge
United States District Court

August 22, 2023

Cc:   Plaintiff, pro se
      Counsel of record